IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| MICHAEL V. COOPER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 2:17-CV-217 |
| vs. | ) |
| | ) **JURY DEMAND** |
| KINDER MORGAN, INC., | ) |
| | |
| Defendant. | |

## COMPLAINT

### I. JURISDICTION

1. This is a suit for discriminatory termination instituted pursuant to the Age Discrimination in Employment Act, as amended, 29 U.S.C. §621 *et seq.* ("ADEA") and the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. §12101 *et seq.* The jurisdiction of this Court is based on 28 U.S.C. §§1331 and 1343(4).

2. Plaintiff Michael Cooper ("Plaintiff") timely filed his charge of discrimination against defendant Kinder Morgan, Inc. ("Defendant") with the Equal Employment Opportunity Commission ("EEOC") within 180 days after the last act of discriminatory treatment. Plaintiff has further filed this suit within 90 days after receipt of his right-to-sue letter.

## II. PARTIES

3. Plaintiff is a citizen of the United States over the age of nineteen and a resident of Prattville, Alabama.

4. Defendant is a corporation headquartered in Houston, Texas and an employer as that term is contemplated under the ADEA.

## III. FACTS

5. In 2006, Plaintiff became employed by Defendant's predecessor-in-interest.

6. In 2012, Plaintiff became employed by Defendant when it purchased the predecessor-in-interest.

7. Plaintiff's position was Operations Specialist IV working at Defendant's pumping station in Elmore County, Alabama.

8. Plaintiff's supervisor was Bill Weaver.

9. Over Weaver was Billy Pickard, Area Manager.

10. In or about June of 2015, Plaintiff went on medical leave due to gastrointestinal problems he was having.

11. Company policy provided that Plaintiff check in with his supervisor every two weeks.

12. Weaver told Plaintiff to check in with him every Monday.

13. Plaintiff did so.

14. On or about August 17, 2015, Plaintiff returned to work.

15. On or about August 19, 2015, Plaintiff developed a burning sensation on the bottom of his right foot while at work.

16. On or about August 20, 2015, Plaintiff's right foot began to swell up.

17. That evening after work, Plaintiff emailed Weaver and Pickard and told them about his foot, that he thought it was caused by climbing up and down ladders at work, that he needed to see a doctor about it, and that he would not be at work the next day as a result.

18. Defendant's workers' compensation carrier made Plaintiff an appointment to see another doctor on August 24, 2015.

19. Plaintiff notified Weaver that he would not be at work until he could see that doctor.

20. On or about August 24, 2015, the workers' compensation doctor advised Plaintiff to stay off his feet until his next appointment on September 11.

21. Plaintiff advised Weaver of the situation and asked if he should come to work and do desk work.

22. Waver said no.

23. On or about September 9, 2015, Plaintiff sent an email to Weaver and Pickard attaching a letter from the doctor who had been treating Plaintiff for his gastrointestinal problems.

24. The letter stated that it was the doctor's opinion that these problems were being caused by severe anxiety and stress.

25. In his email, Plaintiff stated that he was requesting counseling and medical help from Defendant for this.

26. Weaver and Pickard called Plaintiff later that day and told him to call either one of them every Monday as long as he was off, rather than send a text message as he had been doing.

27. On or about September 11, 2015, Plaintiff saw the workers' compensation doctor again about his foot.

28. The doctor gave Plaintiff a cortisone shot and said that, if it did not work, he would refer Plaintiff to a foot specialist.

29. The doctor further said that he would release Plaintiff to return to work.

30. The doctor gave Plaintiff a copy of a release.

31. Plaintiff advised Weaver that he should be returning to work on September 14.

32. Later that day, Plaintiff looked at the doctor's release and noticed that it was not the correct form that Defendant needed.

33. On or September 14, 2015, Plaintiff went to the workers' compensation doctor's office, explained that they had used the wrong form, and gave them the correct form.

34. The nurse there said the doctor was out that day but that they would get it completed the day.

35. As it was a Monday, Plaintiff also called Weaver to report in.

36. Weaver said that he had not received a release from the workers' compensation doctor to return Plaintiff to work.

37. Plaintiff told Weaver about the incorrect form and that he had taken the correct one to the doctor's office that morning.

38. On or about September 15, 2015, Plaintiff spoke to the workers' compensation doctor's office again about the release.

39. The records supervisor there said that it had not yet been completed but that they would let Plaintiff know when it was.

40. Plaintiff never heard back from them or anyone else about that.

41. The cortisone shot did not work, so on September 17 Plaintiff saw the foot specialist to whom the workers' compensation doctor had referred him.

42. The foot specialist took Plaintiff off work 2-4 weeks.

43. Plaintiff took paperwork about that to Weaver that day.

44. Weaver did not say anything about having received a return to work release from the workers' compensation doctor.

45. On or about September 21, 2015, Plaintiff called Weaver as it was a Monday.

46. Plaintiff got his voice mail and left him a message that he would be out of work that week per the foot specialist.

47. Plaintiff followed up with an email to Weaver on the same day.

48. On or about September 28, 2015, Plaintiff again called Weaver as it was a Monday.

49. Plaintiff told Weaver that he would be out of work that week per the foot specialist.

50. Weaver did not say anything about having received a return to work release from the workers' compensation doctor.

51. On or about September 30, 2015, Plaintiff went back to the foot specialist.

52. The specialist told Plaintiff to remain off his feet.

53. That same day, Plaintiff called the workers' compensation insurance company because his most recent benefits check was short.

54. Plaintiff spoke to the person assigned to his claim, Jeanne Sternman.

55. Sternman said that she had received a fax from the workers' compensation doctor on September 15 releasing Plaintiff to return to work as of September 11.

56. This was the first Plaintiff had heard this, and he told Sternman so.

57. Plaintiff called Weaver and asked him if he knew about the release, and Weaver said no.

58. Plaintiff told Weaver he would get Sternman to send it to him.

59. Plaintiff also told Weaver that he had seen the foot specialist that day and was told to continue to stay off his feet.

60. Plaintiff talked to Weaver again later that day, and Weaver told Plaintiff that he had received an email from Sternman with the release attached but that Plaintiff had still not been released by the foot specialist.

61. On or about October 3, 2015, Plaintiff received a letter from Weaver dated October 2 stating that Plaintiff was terminated because he had failed to provide him updated information after he saw the foot specialist on September 30.

62. This was false and pretextual.

63. Plaintiff had spoken to Weaver four times that day and provided him all updated information.

64. Plaintiff was 58 years old at the time of his termination.

65. Plaintiff was replaced with someone substantially younger than he.

## IV. CAUSES OF ACTION

### COUNT I- ADEA

66. Paragraphs 1-65 above are incorporated by reference.

67. Defendant violated Plaintiff's rights under the ADEA by terminating his employment because of his age.

68. As a result of the above described discriminatory act, Plaintiff has been made to suffer lost wages and benefits and other out-of-pocket losses.

**WHEREFORE, these premises considered,** Plaintiff respectfully requests the following:

(i) That the Court issue an Order declaring that Defendant's employment acts as described herein violated the ADEA;

(ii) That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant from further violation of Plaintiff's rights under the ADEA;

(iii) That the Court enter an Order requiring Defendant to make Plaintiff whole by re-employing him and placing him in the position he would have occupied in the absence of discrimination (or, alternatively, providing front-pay), providing back-pay with interest and restoration of lost benefits and other out-of-pocket losses, ordering

Defendant to pay liquidated damages as a jury may assess, and awarding Plaintiff an amount to compensate him for any adverse tax consequences as a result of a judgment in his favor; and

(iv) That the Court award such other available legal and equitable relief as justice requires, including, but not limited to, an award of costs, attorney's fees and expenses.

## COUNT II- ADA

69. Paragraphs 1-65 are incorporated herein.

70. Plaintiff's anxiety constituted a mental impairment under the ADA.

71. Due to this impairment, Plaintiff was substantially limited with respect to the major life activity of neurological function.

72. Plaintiff was and is disabled under the ADA as a result.

73. Plaintiff's foot condition constituted a physical impairment under the ADA.

74. Due to this impairment, Plaintiff was substantially limited with respect to major life activities of walking, climbing, lifting, and standing.

75. Plaintiff was and is disabled under the ADA as a result.

76. Plaintiff was a qualified individual able to perform the essential functions of his position, with accommodation.

77. Defendant violated Plaintiff's rights under the ADA by terminating his employment because of (a) his disabilities (either and/or both), and/or (b) his request for reasonable accommodations for his disabilities (counseling and medical help for his anxiety and time off from work for his foot condition, either and/or both).

78. As a result of the above described discriminatory acts, Plaintiff has been made to suffer lost wages and benefits and other out-of-pocket losses, emotional distress, and mental anguish.

**WHEREFORE, these premises considered,** Plaintiff respectfully requests the following:

(i) That the Court issue an Order declaring that Defendant's actions described herein violated the ADA;

(ii) That the Court grant Plaintiff a permanent injunction enjoining Defendant, and its agents, employees, successors, and those acting in concert with Defendant from continuing to violate the ADA;

(iii) That the Court enter an Order requiring Defendant to make Plaintiff whole by re-employing Plaintiff and placing him in the position he would have occupied in the absence of discrimination (or front-pay), providing back-pay and lost benefits with interest, ordering Defendant to pay compensatory and punitive damages as a jury

may assess, and ordering that Plaintiff be awarded an amount to compensate him for any adverse tax consequences as a result of a judgment in his favor;

(iv) That the Court award such other legal and equitable relief as justice requires, including, but not limited to, an award of costs, expert witness fees, attorney's fees, and expenses.

                                        Respectfully submitted,

                                        /s/ Adam M. Porter
                                        Adam M. Porter
                                        Attorney for Plaintiff
                                        Alabama Bar ID: ASB-2472-P75A
                                        2301 Morris Avenue, Suite 102
                                        Birmingham, Alabama 35203
                                        Phone: (205) 322-8999
                                        Facsimile: (205) 402-4619
                                        Email: adamporter@earthlink.net

Plaintiff requests trial by struck jury.

                                        /s/ Adam M. Porter
                                        Attorney for Plaintiff

<u>Defendant's Address</u>:
Kinder Morgan, Inc.
c/o CT Corporation System, Registered Agent
1999 Bryan St., Ste. 900
Dallas, TX 75201-3136